## JOHNSTUN v. HARRISON.

No. 7174.   Decided September 15, 1948.   (197 P. 2d 470.)

See 29 C. J., Statutes, sec. 174; 18 Am. Jur. 382. Treatment of excess or illegal ballots when it is not known for which candidate or measure they were cast, note, 155 A. L. R. 677.

*Patterson & Bayles,* of Salt Lake City, and *George E. Stewart, Jr.,* of Roosevelt, for appellant.

*Ray E. Dillman,* of Roosevelt, for respondent.

WOLFE, Justice.

Appeal by the defendant or contestee (Harrison) from an order and judgment of the Fourth District Court holding plaintiff or contestant (Johnstun) to be the duly elected city councilman of Roosevelt, Utah. The facts are substantially without dispute and insofar as material here are as follows:

On November 4, 1947, an election for municipal officers of the city of Roosevelt was held. The offices to be filled were Mayor, one Councilman for the four year term, three Councilmen for the two year term, Recorder and Treasurer. Two political parties known respectively as the People's Party and the Progressive Party, entered slates of candidates for the various offices. Plaintiff Johnstun was a candidate of the People's Party for the office of councilman for one of the two year terms, and the defendant Harrison

was a candidate of the Progressive Party for the same office. There being three such offices to fill, each party had three candidates for such offices. The candidates of the two parties for the offices in question were listed on the ballot in the following order:

| "People's Party | Progressive Party |
| --- | --- |
| "Lynn Johnson [Johnstun] | Elmer Eldredge |
| "Lawrence Pack | J. H. Harrison |
| "Sam G. Weiss | Norman Murphy" |

It will be noted that the names of plaintiff and defendant were not opposite each other on the printed ballot, the name of plaintiff being opposite that of Elmer Eldredge, and that of defendant being opposite the name of Lawrence Peck.

On November 24, 1947, at a meeting of the Board of Canvassers, it was determined that Johnstun, plaintiff, had received 205 votes and Harrison, defendant, had received 207 votes. Harrison was declared elected and a certificate of election was issued to him. Thereafter, Johnstun commenced this election contest proceeding. The trial court determined that plaintiff, Johnstun, had received 205 votes and defendant, Harrison, had received 203 votes, and declared plaintiff the elected candidate and rightfully entitled to hold the office. From that judgment defendant prosecutes this appeal.

The grounds upon which plaintiff contested the results of the election as certified by the Board of Canvassers were set forth in paragraphs 7 and 8 of his complaint as follows:

"7. That in counting the ballots in each of the said election districts the election judges did in a great number of instances fail to count for plaintiff ballots in which persons had marked their x in the square opposite the name of the plaintiff when no line was drawn through the name of the person on the opposite ticket. That in many instances voters would vote the emblem in and for the Progressive Ticket, and then the same voters make an x in the square opposite the name of plaintiff, and in counting such ballots, the judges would and did refuse to count such votes for plaintiff. That by reason of the failure

of said judges of election to count and tally such votes for plaintiff and to which plaintiff was entitled to have counted for him, more that [sic] 10 votes in each of said election districts were withheld from plaintill [sic] to which ballots and votes plaintiff was entitled, and if said ballots to which plaintiff was entitled to have counted for him, and [sic] in fact been counted and registered on the tally sheet, plaintiff would have received more than 18 votes more than were cast for defendant.

"8. That several ballots, the exact number of which are unknown to plaintiff were marked in the party emblem circle of the Progressive Party and the voter would mark an x in the square opposite one of the three candidates for 2 year City Councilman whose name appeared under the People's party column, but nothing appeared on such ballot to disclose which of the three candidates for 2 year city councilman on the Progressive Ticket the voter intended eliminate [sic] by having voted for three thereunder and one on the Peoples [sic] party, and under such ballots the judges of election did eliminate the vote for the person voted for individually on the Peoples [sic] Party ticket, and the name opposite the name of such candidate as it appeared on the Progressive Partys [sic] ticket. That by such erroneous counting of such ballots for defendant, he received and was given more than two votes which he was not entitled to have had counted for him, that were in fact counted for him."

To this complaint, defendant filed a general demurrer which was overruled by the trial court. That ruling is assigned as error.

While the complaint is inartistically drawn, and in many respects not clear, it appears that plaintiff relied on three propositions, the first two of which are set forth in paragraph 7 and the last of which is contained in paragraph 8:

1. The election judges failed to count for plaintiff Johnstun ballots upon which a cross had been placed in the square opposite his name, where the name of the Progressive candidate which appeared opposite his name on the ballot had not been crossed out.

2. The election judges refused to count as votes for plaintiff ballots whereon the voter had voted the Progressive ticket by marking the circle at the top, and had also placed a cross after the name of plaintiff.

3. The judges counted for defendant certain ballots upon which the voters had voted the Progressive ticket, and had also marked a cross by the name of one of the candidates for councilman of People's party without indicating which of the three candidates of the Progressive party should be scratched.

As to the first two propositions, embodied in paragraph 7 of the complaint, there is grave doubt that either of them standing alone, or both of them standing together, state facts on which plaintiff would be entitled to relief. As to both propositions, not enough facts are pleaded to make it definitely appear that plaintiff was entitled to have counted for him the ballots which he complains were not counted for him. Whether he was entitled to have those ballots counted for him depends upon how the ballots were otherwise marked, and plaintiff has failed to plead the other necessary facts.

Section 25-6-21, U. C. A. 1943, formerly provided in part as follows:

"When only one officer for any office is to be elected, if the voter marks in squares opposite the names of more than one candidate therefor, or if having marked the circle on one ticket, he shall mark the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate upon the ticket beneath the marked circle, such vote shall not be counted for such office. When two or more officers are to be elected to the same office, if more squares opposite the names of candidates for such office are marked than there are officers to be elected to such office, or, if the aggregate number of unscratched names of such candidates on a ticket, the circle of which is marked, added to the number of such candidates on other tickets whose names are marked shall exceed the number of officers to be elected to such office, the ballot shall not be counted for any such candidates."

That portion of the above quoted statute setting forth the rules to govern the counting of votes, where only one candidate was to be elected to the office was construed in *Evans* v. *Reiser,* 78 Utah 253, 2 P. 2d 615, and it was there held that the language was to be given its literal meaning, and that where the voter had marked a cross in the circle of one

ticket, and had marked the name of a candidate on another ticket without drawing a line through the name of the corresponding candidate on the ticket beneath the marked circle, the ballot could not be counted as a vote for either candidate for that particular office.

Thereafter, and as a result of that decision, the election laws were amended by the 1933 legislature, Laws 1933, c. 21, so as to provide .for more liberal rules in the marking and counting of ballots. However, the particular language of the statute relied upon by this court in reaching its decision in *Evans* v. *Reiser,* supra, was not changed.

The same question was presented to this court in *Maw* v. *Lee,* 108 Utah 99, 157 P. 2d 585, and we there followed *Evans* v. *Reiser,* supra, holding that the amendments to other parts of the statute did not repeal or change the meaning of that portion of the statute quoted, and that it must still be given full force and effect.

In 1947, following our decision in *Maw* v. *Lee,* supra, the legislature, Laws 1947, c. 37, amended Sec. 25-6-21, U. C. A. 1943, so that as amended, it now reads in part as follows:

"Ballots thus marked [as provided in Section 25-6-20, U. C. A. 1943] shall be counted for the candidates designated by the marks in the squares, and for the candidates upon the ticket beneath a marked circle excluding the candidates for offices for which a vote has been cast for a candidate for the same office upon another ticket by the placing of a mark in the square opposite the name of such candidate on such other ticket."

Apparently, under the new law it is no longer necessary that a voter cross out the name of the candidate whom he wishes to scratch *where only one candidate is to be elected to office.* All that is necessary is that he mark a cross by the name of the candidate for whom he does wish to vote. However, that is a question with which we are not here concerned, for in this case three candidates were to be elected, and a different part of the statute applies. The portion of the statute here applicable now reads as follows:

"When two or more officers are to be elected to the same office, the voter may vote for the candidates for such office for whom he desires to vote, provided, that if he marks more squares than the aggregate number of names to be filled on such ticket, the vote shall be rejected as to such officer. *If a voter has placed a cross in the circle at the head of the ballot and wishes to vote for a person on another ticket for an office for which more than one person is to be elected, he shall scratch through the names of the persons of the party under whose emblem he has marked a circle, for whom he does not wish to vote.*" (Italics added.)

The language of the statute is clear, and it unequivocally provides that where the voter has placed a cross on one party ticket and he desires to vote for a candidate of a different political party for an office for which more than one person is to be elected, then he must not only place a cross in the square of the candidate for whom he wishes to vote, but he must also cross out the candidate on the party ticket he has voted whom he wishes to scratch. Under this statute, those ballots upon which the voters marked a cross on the Progressive ticket, and also a cross by plaintiff's name, but did not cross from the Progressive ticket the name of any candidate for councilman could not be counted as ballots for any of the candidates for councilman.

Plaintiff's first proposition sets forth merely that the election judges failed to count for him ballots upon which a cross had been placed in the square opposite his name, and the name of the Progressive candidate which appeared opposite his name on the ballot had not been scratched. If the voter had attempted to vote the Progressive ticket by placing a mark in the circle at the head of the ticket, and had also placed a cross in the square opposite plaintiff's name, plaintiff (and for that matter none of the Progressive candidates) would be entitled to have such ballot counted, *unless* the name of one of the Progressive candidates had been lined out. (It would not necessarily have to be the name on the Progressive ticket opposite plaintiff's which was scratched.) On the other hand, if the

voter had not voted either party ticket, plaintiff would clearly be entitled to have counted for him ballots on which the square opposite his name was marked, even though no name was scratched on the Progressive ticket, unless, of course, the names of more than three candidates were marked, in which case none of them would receive a vote. It is apparent that plaintiff failed to plead all of the facts necessary to show that he was entitled to have the votes counted for him, and his first proposition fails to state a cause of action.

Plaintiffs' second proposition recites that the election judges refused to count for him ballots whereon the voter had voted the Progressive ticket, and had ■ also placed a cross after the name of plaintiff.

Here again plaintiff has failed to state fully the facts. He would be entitled to have such ballots counted for himself, *if, but only if,* the voter had crossed out or otherwise unequivocally indicated which candidate on the Progressive ticket he desired to scratch. If the voter did nothing more than place a cross in the circle under the Progressive emblem, and place a cross by plaintiff's name, none of the candidates for either party would be entitled to have the ballot counted for himself, for the voter would in effect have voted for four candidates, when only three were to be elected.

Plaintiff's third proposition is that the judges counted for defendant certain ballots upon which the voters had voted the Progressive ticket, and had also marked a cross by the name of one of the candidates for councilman of the People's party without indicating which of the three Progressive candidates should be scratched. As above indicated, such ballots should not be counted for any of the candidates, and if three or more such ballots were counted for defendant, there was error upon which an election contest might be properly based.

Although the first two propositions set up by plaintiff fail to state sufficient facts to show a cause of action, the third proposition is sufficient, and therefore the court did not err in overruling the general demurrer.

Defendant next contends that the court erred in opening the ballot pouches, on the grounds that there was no pleading or evidence to justify the same. The sufficiency of the pleading has already been determined and need not be further discussed. The witness, G. H. ■ Harrison, testified that he was an official watcher in voting district No. 1 and that there were at least three ballots in which the circle under the Progressive ticket had been marked, and also the square by the name of plaintiff, and that the names of none of the Progressive candidates for two year councilman had been lined out, and that such ballots were counted as votes for defendant, but not for plaintiff. As heretofore indicated such ballots should not have been counted for any of the candidates for that office, and hence if such testimony were true, defendant was credited with at least three more votes than he was entitled to. That would be sufficient to change the result of the election, and hence was sufficient to justify the court's order to open the ballot pouches. The witness Harmston, the official watcher in the other voting district, testified that four or five ballots marked as described above were counted for defendant and not for plaintiff. This was additional evidence to justify the court in ordering the ballot pouches opened. There was no error in that regard.

After the ballot pouches were opened and the ballots were counted, it was stipulated between counsel that in voting district No. 1, 68 votes were cast for plaintiff (Johnstun) and 67 for defendant (Harrison). As to voting district No. 2 the court found that 137 votes were cast for plaintiff, and 136 for defendant. Except as to five ballots in district No. 2, three of which were counted for defendand two of which were counted for plaintiff, there is no

dispute between the parties that the ballots were correctly counted by the court. There was one ballot voted for defendant from which the stub was not detached, and this the court refused to count. The court found that plaintiff received 205 votes and defendant 203 and declared plaintiff the elected candidate.

All of the ballots cast were admitted in evidence, but on stipulation of counsel, all but the five questioned ballots and the ballot which the court refused to count because the stub was not detached, were withdrawn from the files and returned to the city recorder. Consequently none of the ballots, except the six questioned ones to which we shall later advert, are before us. However, it appears from the record that in addition to the ballots heretofore mentioned, there were 69 ballots which were not counted for either party. We do not know for what reason these ballots were rejected. All that appears in the record is the statement by counsel for defendant, to which counsel for plaintiff made no objection, reading as follows:

"Mr. Patterson: May I make a record at this time with reference to the votes which were cast for neither, which have been rejected by this court. That no vote was voted where the emblem was voted and where one vote was cast upon the other side, thus constituting voting for four. There is only one instance in the votes rejected, that is, in the no-count votes, where four was voted, and in that instance they voted in the square of the Progressive ticket and voted for Lawrence Pack under the People's ticket with a cross, voting for four  *  *  *"

Counsel for defendant then moved that the count be set aside, and that defendant be declared elected on the grounds that from an examination and counting of the ballots it appeared that there were no ballots marked and counted as alleged in plaintiff's complaint. This motion was denied, but defendant has not assigned the court's ruling thereon as error. However, he has argued in support of other assignments of error, the question raised by his motion, namely that the court should have declared defendant elected, in view of the fact that the evidence failed to support the allegations of plaintiff's complaint, although

a counting of the ballots showed plaintiff to have received more votes than defendant.

Defendant relies upon the case of *Hamer* v. *Howell*, 31 Utah 144, 86 P. 1073, wherein it was held that although the statutes governing election contests should be liberally construed in order that justice might be done, this rule did not extend so far as to overturn the well established rule of practice that evidence must be confined to issues raised by pleadings, and that the judgment rendered must conform thereto. It is undoubtedly true that the evidence did not support the allegations of plaintiff's complaint. So far as the record shows, there was not more than one ballot marked as alleged in plaintiff's complaint, and assuming that it was counted for defendant, as alleged in the complaint, it would not be sufficient to change the result of the election as certified by the board of canvassers. Hence, plaintiff failed to establish the allegations of his complaint. On the other hand, the count of the ballots by the court shows quite clearly that plaintiff received more ballots than defendant and was entitled to the office.

The question before us then is whether the count of the court should be set aside, and the judgment reversed on the grounds that the proof failed to establish the specific errors alleged in the complaint, or whether the judgment should be affirmed because the count of the ballots showed conclusively that plaintiff received more votes than defendant, and hence was entitled to the office.

The view taken by the trial judge was that the plaintiff had the burden of establishing that there were errors in the accepting, rejection or counting of the votes sufficient to change the result of the election, and this was a prerequisite to an order by the court for opening the ballot pouches. However, when such a showing was made, the court was required to make an order of opening: and the ballots having been opened and counted, and it having been established that plaintiff received more votes than defendant, although none of the errors alleged by

plaintiff were shown to have been made, the court could not do otherwise than declare plaintiff elected. The relevant statutes are as follows:

### Section 25-14-11, U. C. A. 1943:

"If an inspection of the ballots of any election district * * * shall be necessary for the determination of any election contest * * * the judge * * * may * * * require the proper officer to procure the same from the person in whose possession or custody the same may be, and such custodian shall deliver the same to such officer, who shall deliver them unopened to the judge. The judge shall open and inspect the same in open court in the presence of the parties or their attorneys * * *."

### Section 25-14-12, U. C. A. 1943:

"If in any such case it appears that a person other than the one returned has the highest number of legal votes, the court must declare such person elected."

The testimony of the official election watchers heretofore detailed, made it necessary that the ballots be opened and counted in order to determine the contest; and the trial court, pursuant to the provisions of Section 25-14-11 ordered the ballots produced in open court, opened, inspected, and counted. And it appearing that plaintiff received more votes than defendant, the court, pursuant to the provisions of Section 25-14-12, declared plaintiff elected. In this there was no error.

Of the six ballots about which there is a dispute, three were counted for defendant, two for plaintiff, and one was rejected. There is no cross-assignment of error that the court erred in counting the three disputed ballots for defendant, and hence it is unnecessary for us to consider the propriety of the court's ruling in that regard. The two ballots which were counted for plaintiff, and which defendant insists should be rejected, are substantially similar. On neither ballot was either party ticket voted, the voter in each case marking the individual squares of the candidates for whom he voted. On each ballot the voter indicated his preference by check marks

rather than by crosses. The ballots are marked identically except that on one ballot all three candidates of the People's Party for two year councilman were voted, whereas on the other, the Progressive candidate Murphy was voted, instead of the People's candidate, Weiss. Defendant contends that because check marks were used, and because the ballots were similarly voted, they "show an attempt on the part of one or more persons to so mark their ballots that it can be determined that the intent of said person or persons is to show concerted action on the part of a group in designating their ballots so that the action of said group or voter can be determined by any person," and therefore the ballots should have been rejected as required by Section 25-6-21, U. C. A. 1943, as amended. In this contention there is no merit. It was held in *Franz* v. *Hansen,* 104 Utah 412, 140 P. 2d 631, that where a ballot was marked with check marks instead of crosses, such a ballot should not be rejected, since the intent of the voter was clearly shown, and check marks could not be said to be distinctive, so as to identify the ballot, since check marks are a common method of indicating the intention of the person using them.

The fact that two voters used check marks instead of crosses in marking their ballots, does not show an intent on the part of the group to identify their ballots, especially in view of the fact that the ballots were not identically voted. On the contrary, it is the very fact that check marks are commonly used by persons to indicate their intent, and hence that several voters might reasonably be expected to use such marks, that is the basis of the ruling in *Frantz* v. *Hansen* that ballots voted by check mark should not be rejected. The court below properly counted the two ballots for plaintiff.

Since the ballot from which the stub was not detached, and which the court rejected, would not be sufficient to change the result, even if it were counted for de-

fendant, it is not necessary for us to determine whether or not the court erred in rejecting that ballot.

Defendant also assigns as error that the trial court allowed plaintiff his costs in this action. No useful purpose could be served in detailing the theory upon which this contention is based. For a determination of the question, it is sufficient to quote that portion of Section 25-14-13, U. C. A. 1943, which reads as follows:

"* * * if the election is annulled and set aside, judgment for costs *must* be rendered against the party whose election was contested and in favor of the party contesting the same." (Italics added.)

There was no error, Judgment affirmed. Costs to respondent.

McDONOUGH, C. J., and PRATT, WADE and LATIMER, JJ., concur.